# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0682, <u>K.C. v. S.C.</u>, the court on June 15, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The defendant, S.C., appeals a domestic violence final order of protection, <u>see</u> RSA 173-B:5, I (2022), issued by the Circuit Court (<u>Stephen</u>, J.), following a hearing on the merits, in favor of the plaintiff, K.C. The defendant argues that in ruling that he had engaged in acts of "abuse," <u>see</u> RSA 173-B:1, I (2022), the trial court erred by finding, by a preponderance of the evidence, that he made a certain statement, and that his conduct constituted a credible present threat to the plaintiff's safety. We affirm.

To obtain relief under RSA chapter 173-B, a plaintiff must prove, by a preponderance of the evidence, that the defendant engaged in "abuse." <u>S.C. v. G.C.</u>, 175 N.H. 158, 163 (2022). A finding of abuse requires proof that the defendant, who is a family or household member or a current or former sexual or intimate partner of the plaintiff, committed or attempted to commit one or more statutorily enumerated crimes, and that such conduct constitutes "a credible present threat to the [plaintiff's] safety." RSA 173-B:1, I; <u>see</u> <u>S.C.</u>, 175 N.H. at 163. The trial court "may consider evidence of such acts, regardless of their proximity in time to the filing of the petition, which, in combination with recent conduct, reflects an ongoing pattern of behavior which reasonably causes or has caused the [plaintiff] to fear for his or her safety or well-being." RSA 173-B:1, I.

When issuing a protective order under RSA 173-B:5, the trial court is required to make a specific finding as to the criminal conduct engaged in by the defendant that constitutes the abuse. <u>See</u> <u>Fisher v. Minichiello</u>, 155 N.H. 188, 193 (2007); <u>Fillmore v. Fillmore</u>, 147 N.H. 283, 285 (2001). On appeal, the trial court's findings of fact are final, and we engage in <u>de novo</u> review of questions of law raised by the appealing party. RSA 173-B:3, VI (2022); <u>S.C.</u>, 175 N.H. at 162. We review sufficiency of the evidence claims as a matter of law, and will uphold the trial court's findings and rulings unless they lack evidentiary support or are tainted by error of law. <u>S.C.</u>, 175 N.H. at 162. We view the evidence in the light most favorable to the prevailing party, here, the plaintiff, deferring to the trial court's judgment as to the credibility of the witnesses and the weight of the evidence presented. <u>Id</u>. at 162-63. The technical rules of evidence do not apply in domestic violence proceedings; the

trial court generally may admit evidence that it considers relevant and material. RSA 173-B:3, VIII (2022); see also N.H. R. Ev. 1101(d)(3).

In this case, the plaintiff introduced evidence that on October 21, 2022, the defendant, who is the plaintiff's ex-husband, sent the plaintiff a text message stating, "Let me see my f**king kids." When the plaintiff offered to meet the defendant at a location where he could see the kids that he shares with the plaintiff, he replied, "F**k this sh*t. Come take [a baby the defendant recently had with his current wife,] and I'm gonna f**king disappear. . . . I'm done . . . [w]ith f**cking everything." The parties did meet, and the plaintiff described the defendant's behavior as "[e]rratic" and not "emotionally regulated." The plaintiff also testified that the defendant's eyes were bloodshot and glassy, and she suggested that he has a history of drug abuse. In subsequent text messages, the defendant stated, "I can't live like this anymore. Make sure [the defendant's children] know I love them and I'm sorry."

Three days later, after the parties exchanged text messages concerning a medical appointment for their child, and after the plaintiff expressed disagreement over whether the defendant's new wife could be present at the appointment, the plaintiff received a text message from the defendant's phone that stated, "He might shoot you want to these days because that's what he says every time you piss him off." The plaintiff testified that she felt threatened when she received the message, and that, in light of the defendant's recent erratic behavior, the message caused her fear and prompted her to file the present petition for a restraining order.

In granting the protective order, the trial court found that the defendant had engaged in "[c]riminal threatening as defined in RSA 631:4" and "[h]arassment as defined in RSA 644:4." See id. Specifically, the trial court found that the defendant had engaged in such conduct when he

> told his current wife he "might shoot [the plaintiff] one of these days." His current wife texted the plaintiff that is what "he says every time [the plaintiff] pisses him off." He wrote "come take [the child he recently had with his current wife] and I'm gonna f**king disappear." "I can't live like this anymore. Make sure the [parties' children] know I love them and I'm sorry."

In determining that the defendant's conduct constitutes a present credible threat to the plaintiff's safety, the trial court found that

> The plaintiff suspects that the defendant is unstable and he appeared that way on Friday October 21 when she met him and he was with a minor with bloodshot glassy eyes and acting erratic. This combined with a threat through a third person and suspicion

2

of possible self harm or disappearance gives rise to a credible threat to safety.

On appeal, the defendant argues that, because the trial court found that his current wife had sent the text message threatening to shoot the plaintiff, because he denied that he had conveyed that threat to his current wife, and because there was no testimony that he had made that threat, the trial court erred by finding that he had made that statement to his current wife at all. He further argues that the trial court erred by finding that his conduct constitutes a credible present threat to the plaintiff's safety. We disagree.

Regardless of whether there was testimony that the defendant had conveyed the threat to shoot the plaintiff to his current wife, the text messages were admitted without objection. Based upon the text messages, including the context in which they were exchanged reflecting a substantial amount of anger directed at the plaintiff, the trial court reasonably could have inferred that the defendant had in fact told his current wife that he might shoot the plaintiff, and that he makes similar statements every time the plaintiff angers him. Although the trial court could have credited the defendant's denial that he had made that statement, we defer to the trial court's credibility determinations, see S.C., 175 N.H. at 162-63, and in view of the defendant's multiple and conflicting explanations for why he did not clarify the text message, the trial court's decision not to credit the denial was reasonable.

Moreover, the defendant's erratic behavior and text messages just three days earlier, in which the defendant told the plaintiff that he would "disappear," that she should come and take the child he had recently had with his current wife, that he "can't live like this anymore," and that the plaintiff should tell their children that he loves them, support the trial court's finding that the defendant's conduct constitutes a credible present threat to the plaintiff's safety. We note that all of this conduct occurred within ten days of the hearing on the merits. Upon this record, the trial court's findings and rulings were neither lacking evidentiary support nor tainted by error of law. Id. at 162.

Affirmed.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**

3